[Cite as *State ex rel. Dailey v. Indus. Comm.*, 2019-Ohio-2520.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Kevin A. Dailey, | : | |
| Relator, | : | |
| v. | : | No. 17AP-675 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on June 25, 2019

**On brief:** *Knisley Law Offices,* and *Kurt A. Knisley,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

**On brief:** *Dave Yost,* Attorney General, and *Michael J. Roche,* for respondent Hocking Technical College.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

NELSON, J.

{¶ 1} For all the procedural wrangling in this case, the matter boils down to something pretty simple. We're not going to grant a writ of mandamus ordering the Industrial Commission of Ohio to hear and rule on something that it already has decided on its own, and we're not going to grant a writ of mandamus against the commission requiring it to rule one way when its decision going the other could be—and in fact *is*—on direct appeal to a Common Pleas Court of competent jurisdiction.

{¶ 2} The matter has taken some twists and turns, but a rough summary of where things now stand essentially disposes of the requested extraordinary writ. Relator Kevin

Dailey has sought to be allowed to participate in the workers' compensation fund for an injury claim of "myocardial infarction" and for "coronary artery disease." The commission has allowed his claim for the myocardial infarction. The commission has denied his request for the "Additional Allowance" of coronary artery disease. *See, e.g.,* Ev. Stip. 37 (Staff Hearing Officer Order mailed June 7, 2016), 38 (commission refuses administrative appeal, June 28, 2016). Mr. Dailey has appealed that condition denial to the Athens County Court of Common Pleas, and has filed a complaint and jury demand there asking that "he be permitted to participate in the benefits of the State Insurance Fund for the additional condition of coronary artery disease * * *." Ev. Stip. 46 ("Re-Filed Complaint and Jury Demand time-stamped 1/18/2017"); Ev. Stip. 39 ("Notice of Appeal Under Section 4123.512," reciting that appeal is from commission's 06/28/2016 refusal of his administrative appeal from the Staff Hearing Officer's denial of his motion to have coronary artery disease as an additional allowed condition).

{¶ 3} We provide a truncated version of the procedural history of these claims below. There should be no suspense, though, as to our role here: Because the Commission has ruled on the coronary artery disease claim, and because Mr. Dailey has (and is pursuing) an adequate remedy at law under R.C. 4123.512 by which to address his disagreement with that ruling, we will dismiss the petition for the requested writ.

{¶ 4} On September 22, 2017, Kevin A. Dailey filed his petition asking this court for a writ of mandamus directing the commission either to reinstate a Staff Hearing Officer's order from 2014 allowing his worker's compensation claim for coronary artery disease, or to hold a new hearing on that claim in light of the commission's "duty to consider the merits of Relator's request to participate in the State Fund for coronary artery disease." Petition at ¶ 25 and prayer. On February 14, 2019, the magistrate issued her decision recommending that we deny the writ. Mr. Dailey has filed objections to the magistrate's decision, and we consider those objections after an "independent review" pursuant to Civil Rule 53(D)(4)(d).

{¶ 5} Mr. Dailey suffered a cardiac event while lifting pallets during his employment as a firefighting instructor at Hocking Technical College. An April 2, 2014 Staff Hearing Officer's order allowed Mr. Dailey's occupational claim for coronary artery disease and myocardial infarction. Hocking Technical College filed a Request for Reconsideration and, on August 13, 2014, the commission vacated the April 2, 2014 order

after concluding that it contained clear mistakes of law. The commission's order did allow the claim for myocardial infarction as an injury claim, but did not rule directly on coronary artery disease as an allowed or disallowed claim.

{¶ 6} In due course, Mr. Dailey filed a motion requesting that the commission "amend his claim, either by direct causation or substantial aggravation of a pre-existing condition, to include * * * CORONARY ARTERY DISEASE," based on a physician's report attached to the motion. Stip. Ev. 32 (Dec. 3, 2015 Mot.). A District Hearing Officer denied the motion. Stip. Ev. 34 (Feb. 24, 2016 Order). Mr. Dailey appealed, and a Staff Hearing Officer issued an order again denying the motion, noting that Mr. Dailey's myocardial infarction claim had been "specifically allowed as an injury claim" and finding that "additionally allowing the claim for the condition Coronary Artery Disease is inconsistent with a claim recognized for an injury." Stip. Ev. 37 (May 31, 2016 Order). The commission refused Mr. Dailey's internal appeal of that order and informed him of his right to appeal under R.C. 4123.512 to a court of common pleas. Stip. Ev. 38 (June 24, 2016 Order).

{¶ 7} On August 26, 2016, Mr. Dailey filed a complaint in the Athens County Court of Common Pleas appealing the commission's June 24, 2016 order. He later voluntarily dismissed the complaint under Civ.R. 41(A), but the commission found nonetheless that it lacked jurisdiction over his subsequent request for reconsideration of the denial of his claim for coronary artery disease because jurisdiction over that issue remained with the trial court. Stip. Ev. 43 (commission order of November 17, 2016). Mr. Dailey then refiled his common pleas case on January 18, 2017. Stip. Ev. 46 ("Re-Filed Complaint and Jury Demand"). Some eight months later, he filed his petition seeking a writ of mandamus from this court, and in June of 2018 he advised the magistrate here that the "Athens County Court of Common Pleas has stayed proceedings pending the outcome of the present case." Relator's Brief at 9.

{¶ 8} Mr. Dailey objects to what he views as "inappropriate" fact-finding by the Magistrate. He further objects to the magistrate's conclusions: that the commission properly exercised jurisdiction over and ruled appropriately in vacating the Staff Hearing Officer's August 13, 2014 order that had allowed the claim of coronary artery disease in addition to the myocardial infarction injury claim; that the commission was not required to state expressly in 2014 that it was denying his claim for coronary artery disease; and that

Mr. Dailey was required to appeal the commission's August 13, 2014 order to a court of common pleas under R.C. 4123.512. Feb. 22, 2019 Relator's Objection to Magistrate's Decision at 2, 5-10.

{¶ 9} A party seeking a writ of mandamus "must establish a clear legal right to the relief requested, a clear legal duty on the part of the commission to provide the relief, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Manpower of Dayton, Inc. v. Indus. Comm. of Ohio*, 147 Ohio St.3d 360, 2016-Ohio-7741, ¶ 9 (citation omitted). While the magistrate's decision focused on the first two requirements, the lack of an adequate remedy at law "is a threshold question," as it "is a necessary prerequisite for relief in mandamus." *State ex rel. Alhamarshah v. Indus. Comm. of Ohio*, 142 Ohio St.3d 524, 2015-Ohio-1357, ¶ 11, citing *State ex rel. Consolidation Coal. Co. v. Indus. Comm. of Ohio*, 18 Ohio St.3d 281, 284 (1985) (citation omitted). For the following reasons, we conclude there is an adequate remedy at law for Mr. Dailey's claim, and we must therefore deny issuance of the writ.

{¶ 10} R.C. 4123.512(A) provides a claimant with the right to "appeal an order of the industrial commission made under division (E) of section 4123.511 of the Revised Code in any injury or occupational disease case, other than a decision as to the extent of disability to the court of common pleas of the county" where the injury occurred or the claimant is employed. The same right of appeal extends to the order of a Staff Hearing Officer that the commission declines to review. *Id.* In such an appeal, "[t]he court, or the jury under the instructions of the court, if a jury is demanded, shall determine *the right of the claimant to participate* or to continue to participate *in the fund* upon the evidence adduced at the hearing of the action." R.C. 4123.512(D) (emphasis added).

{¶ 11} In his petition, Mr. Dailey alleges that the commission abused its discretion by "neglecting to consider the merits of coronary artery disease" in its August 13, 2014 order as a basis for his claim. Petition and Complaint for Writ of Mandamus at ¶ 24. He emphasizes his position that the commission must "consider the merits of [his] request to participate in the State Fund for coronary artery disease." *Id.* at ¶ 25. But notwithstanding what he sees as the deficiencies of the 2014 outcome, he does also acknowledge that "the Staff Hearing Officer, in an order dated 6/1/2016, affirmed the District Hearing Officer's decision denying the additional allowance of coronary artery disease * * *," and that the

commission then "refused [his] appeal [to the commission] and the additional allowance of coronary artery disease remains disallowed." *Id.* at ¶ 14, 15.

{¶ 12} It is precisely because the commission has already determined the (dis)allowance of his coronary artery disease claim that Mr. Dailey has been able to appeal to the common pleas court. R.C. 4123.512(D) provides Mr. Dailey the opportunity to appeal and have a judge or a jury determine his right to participate in the fund for coronary artery disease; that course is available to him, and what's more, he has taken it.

{¶ 13} Mr. Dailey's petition suggests that his focus is on commission (non)decisions of 2014, but the commission made determinations after that. He apparently is concerned that his pending R.C. 4123.512 appeal may be dismissed on grounds of res judicata because he did not so appeal the August 13, 2014 order allowing his claim for myocardial infarction; he says his employer has argued in court that he "forfeited his initial .512 appeal for the full commission order that was wholly silent as to coronary artery disease." Feb. 22, 2019 Relator's Objection at 12. He objects to the magistrate's conclusion that he was required to appeal the August 13, 2014 order in order to obtain a remedy for his coronary artery disease claim. *Id.* at 10.

{¶ 14} We disagree with the magistrate's conclusion on this issue. Mr. Dailey could not have brought a claim to participate in the fund for coronary artery disease under R.C. 4123.512 by appealing from an order that did not mention the condition while allowing another claim. "The claimant in an R.C. 4123.512 appeal may seek to participate in the Workers' Compensation Fund only for those conditions that were addressed in the administrative order from which the appeal is taken." *Ward v. Kroger Co.*, 106 Ohio St.3d 35, 2005-Ohio-3560, syllabus. Because an R.C. 4123.512 appeal from the August 13, 2014 order that failed to mention coronary artery disease would have been vulnerable to dismissal under *Ward*, we sustain that objection to the magistrate's decision.

{¶ 15} *Ward* also demonstrates, though, why Mr. Dailey could appeal the later explicit denial of his coronary artery disease claim to the Athens County Court of Common Pleas under R.C. 4123.512. The commission specifically mentioned the condition on the face of its June 24, 2016 order refusing to hear the appeal of the Staff Hearing Officer's denial, and Mr. Dailey has cited that order as the basis for his pending R.C. 4123.512 appeal.

{¶ 16} Mr. Dailey is not without a remedy at law. He asserts to us that "the Athens County Court of Common Pleas does not have subject matter jurisdiction to hear [his] appeal for coronary artery disease" under R.C. 4123.512 because the Staff Hearing Officer refused his coronary artery disease claim on the grounds that it could not have been caused by the allowed injury of myocardial infarction. Brief of Relator at 25. But a concern that he somehow may be precluded from presenting an occupational disease claim by the language of the Staff Hearing Officer's order does not support a writ of mandamus. The "de novo nature of an R.C. 4123.512 appeal proceeding puts at issue all elements of a claimant's right to participate in the workers' compensation fund." *Bennett v. Admr., Ohio Bur. of Workers' Comp.*, 134 Ohio St.3d 329, 2012-Ohio-5639, ¶ 2. An R.C. 4123.512 appeal "necessitates a new trial, without reference to the administrative claim file or consideration of the results of the administrative hearings." *Robinson v. B.O.C. Group*, 81 Ohio St.3d 361, 368 (1998) (superseded by statute on another issue).

{¶ 17} In *Bennett*, the Supreme Court of Ohio noted that in *Robinson*, it had "fully endorsed" the following description of an R.C. 4123.512 appeal, as stated by this court in *Marcum v. Barry*, 76 Ohio App.3d 536 (10th Dist.1991):

> " ' "Although labeled an appeal and commenced initially by the filing of a notice of appeal, the action in the common pleas court under R.C. 4123.519 [now 4123.512] seeking a redetermination of a decision of the Industrial Commission is not a traditional error proceeding[ ] * * *. R.C. 4123.519 [now 4123.512] contemplates not only a full and complete *de novo* determination of both facts and law but also contemplates that such determination shall be predicated not upon the evidence adduced before the Industrial Commission but, instead, upon evidence adduced before the common pleas court as in any civil action, which may involve a jury trial if demanded. The proceedings are *de novo* both in the sense of receipt of evidence and determination. The common pleas court, or the jury if it be the factual determiner, makes the determination *de novo* without consideration of, and without deference to, the decision of the Industrial Commission. R.C. 4123.519 [now 4123.512] contemplates a full *de novo* hearing and determination." ' "

*Bennett* at ¶ 20, quoting *Robinson* at 368, quoting *Marcum*. *See also, e.g., Clendenin v. Girl Scouts of W. Ohio*, 150 Ohio St.3d 300, 304, 2017-Ohio-2830 (right to participate

"appeals to the common pleas court under R.C. 4123.512 are subject to de novo review")
(citation omitted).

{¶ 18} Because (at least from what has been presented to us) we see no bar to the
common pleas court's authority to determine whether or not Mr. Dailey has a right to
participate in the fund, we find that he has an adequate legal remedy for the denial of his
coronary artery disease claim. Accordingly, his petition for a writ of mandamus is denied.
*See, e.g., Alhamarshah*, 142 Ohio St.3d at 526 ("When the relator has a plain and adequate
remedy at law by way of appeal, courts * * * must deny the writ, regardless of whether the
relator used the remedy.") (citations omitted).

{¶ 19} We sustain Mr. Dailey's objection to the magistrate's determination that he
was required to pursue an R.C. 4123.512 appeal of the commission's August 13, 2014 order,
overrule his other objections to the magistrate's decision as moot, and dismiss his
mandamus petition because R.C. 4123.512 provides him an adequate remedy at law.

*Objections sustained in part and overruled in part; writ dismissed.*

BRUNNER and BEATTY BLUNT, JJ., concur.

————————————

# **A P P E N D I X**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Kevin A. Dailey, | : | |
| Relator, | : | |
| v. | : | No. 17AP-675 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 14, 2019

*Knisley Law Offices,* and *Kurt A. Knisley,* for relator.

*Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

*Dave Yost,* Attorney General, and *Michael J. Roche,* for respondent Hocking Technical College.

IN MANDAMUS

{¶ 20} Relator, Kevin A. Dailey, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to: 1) vacate the August 12, 2014 order wherein the commission exercised its continuing jurisdiction and allowed his claim for "myocardial infarction," but was silent as to the allowance of coronary artery disease or ("CAD"); and 2) vacate the October 6, 2016 order wherein the commission found that it lacked jurisdiction to consider relator's motion

and request for reconsideration concerning the allowance of CAD as a newly allowed condition while relator's R.C. 4123.512 appeal was pending in the Athens County Court of Common Pleas for the allowance of that same condition. Relator argues that his claim against respondent, Hocking Technical College ("HTC") should be allowed for CAD.

Findings of Fact:

{¶ 21} 1. Relator had worked as a fully certified firefighter since 1968.

{¶ 22} 2. Over his 44-year career, relator worked for several different employers.

{¶ 23} 3. From 1982 through 2013, relator was a firefighter for Richland Township (Rushville Volunteer Fire Department) including the last seven years as the department chief. Relator was actively and routinely exposed to smoke, chemicals, fumes, and fires in his positions as both a firefighter and chief.

{¶ 24} 4. Relator also worked as an instructor at HTC where he taught firefighting part-time from 1999 through February 24, 2012. Relator lectured students in all areas of firefighting and his duties included: providing instructional services; performing academic advising; engaging in continuous professional development; participating in department activities; participating in academic affairs; maintaining a safe working area and conditions. At HTC, relator had limited actual exposure to live fires and compliance records from HTC indicate that he attended five live fire training sessions from 2000 to 2012.

{¶ 25} 5. It is undisputed that relator has a family history of heart problems and that he suffered from other health problems including morbid obesity, type 2 diabetes myelitis, hyper lipidemia, hyper tension, and obstructive sleep apnea.

{¶ 26} 6. On February 24, 2012, relator was moving pallets for fire training at HTC. As a result, relator suffered an acute myocardial infarction. At the hospital, relator received an extensive course of treatment including cardiac catheterization, angioplasty, and a coronary artery bypass graft.

{¶ 27} 7. On May 21, 2013, relator completed a First Report of an Injury, Occupational Disease or Death ("FROI-1") application listing HTC as his employer and identifying his position as instructor since September 1999.

{¶ 28} 8. Relator obtained the August 15, 2013 report of Charles V. Mattingly, M.D., who noted that relator was a 61-year old male who worked as a firefighter and was admitted to the hospital complaining of severe chest pain, shortness of breath, diaphoresis and

nausea. Dr. Mattingly also noted that, prior to the onset of symptoms, relator was "reaching for and lifting heavy pallets during a 'training fire.' " Thereafter, Dr. Mattingly noted the results of testing as well as what was revealed during surgery and opined relator suffered from cardiovascular disease. Specifically, in discussing relator's work and its effect on his health, Dr. Mattingly stated:

> Mr. Kevin Dailey is a 61-year-old white male who suffered a heart attack while working as a firefighter in Lancaster, Ohio. He was admitted to Fairfield Medical Center on February 25, 2012 with severe chest pain, shortness of breath, diaphoresis and nausea. Prior to the onset of these symptoms, Mr. Dailey was reaching for and lifting heavy pallets during a "training fire."
>
> * * *
>
> Mr. Dailey's occupation of firefighting is known to be dangerous. However, what is less appreciated by the general public is that the most frequent cause of death among firefighters is heart disease. Cardiovascular events, largely due to coronary heart disease, account for 45 percent of deaths among firefighters on active duty.
>
> The high incidence of death from cardiovascular causes among firefighters raises questions about contributing factors. Possible factors include physical exertion, emergency responses and dangerous job duties. These factors are not unique to firefighting, but are also characteristic of the job duties of police officers, military personnel and individuals in other occupations.
>
> Various biologically plausible explanations for the high morbidity in firefighters from cardiovascular events have been suggested. These include smoke and chemical exposure, extreme physical exertion, handling heavy equipment and materials, heat stress, shift work, high prevalence of cardiovascular risk factors and psychological stressors. In addition, the impact of demanding work while wearing heavy gear is repeatedly established in the literature.
>
> When the demands of work in a stressful environment under extreme temperatures, space and time constraints, and smoke, noise, dust and chemical exposures are considered, it is reasonable to conclude that cardiac stress can be significant.

> All of the foregoing factors can contribute to the incidence of cardiac-related, on-duty morbidity in firefighters.
>
> It is my opinion, to a reasonable degree of medical certainty, that there is a direct correlation between Mr. Dailey's exertion at work and the plaque dissection of his coronary artery, which caused Mr. Dailey to suffer a myocardial infarction and necessitated open heart surgery. The mechanism of acute myocardial infarction is known to be a dissection or tear in the endothelial lining of the coronaries with exposure of the collagen and sub endothelial lipids causing thrombus or clot formation, thereby occluding the artery and leading to an acute myocardial infarction.
>
> Mr. Dailey's myocardial infarction occurred at work while he was under extreme physical and/or exertion-type conditions.

{¶ 29} 9.  The Ohio Bureau of Workers' Compensation ("BWC") referred relator to Ihsan Ul Haque, M.D., for an assessment.  In his October 10, 2013 report, Dr. Haque specifically noted relator suffered a myocardial infarction in February 2012 and that relator had the following non-work-related health conditions:

> Hypertension, diabetes mellitus type 2 since 1970s, arthritis, esophageal reflux, blindness of right eye due to trauma since 1963, depression, hyperlipidemia, obstructive sleep apnea, atrial fibrillation.

{¶ 30} Ultimately, Dr. Haque agreed that relator had suffered a myocardial infarction and noted his work as a "firefighter aggravated the risk factors of [d]iabetes, hypertension, obesity, and hyperlipidemia." Dr. Haque also opined relator was unable to return to his work as a firefighter.

{¶ 31} 10.  In an order mailed October 28, 2013, the BWC allowed relator's claim for CAD and acute myocardial infarction of the anterolateral, initial episode.  The BWC specifically relied on Dr. Haque's opinion that relator's occupational exposure contributed to his conditions.

{¶ 32} 11.  HTC filed an appeal from the BWC order.

{¶ 33} 12.  An independent medical examination was performed by Marc W. Whitsett, M.D.  In his February 5, 2014 report, Dr. Whitsett provided a detailed history of relator's work on the day he suffered the myocardial infarction and his subsequent

treatment.   Thereafter, Dr. Whitsett noted relator's current complaints.   Dr. Whitsett discussed relator's work history, stating:

> He indicates that he has been a firefighter for 44 years. He had previously worked in a small volunteer fire department and also has a history of working as a paramedic for the City of Columbus and North American Rockwell for a few years. He is unable to recall specific dates of employment, despite repeated questioning.
>
> He indicates that he worked for Hocking College beginning 1999 and his last day worked was in May 2013 when he was working part-time. He says that he was working part-time from September 2012 through May 2013.
>
> He states that his job as a firefighter and as an instructor required him to carry equipment occasionally over 100-lbs; he was exposed to extreme heat and smoke; he did heavy lifting and 100% physical activity. He had to wear turn-out gear and did fire simulation with very extreme heat exposure. The fume exposure occurred in-between fire simulator episodes. He did use an SCBA respiratory during the fire simulation. He relates that he trained fire-fighter I and fire-fighter IIs which are professional fire fighters.
>
> He indicates that he was frequently exposed to flashes and estimates about 12 flashes daily with residual sunburn on his skin despite heat protection from the heat exposure.
>
> He also relates that he worked for the Richland Fire Department and the Columbus Fire Department, but he cannot provide any detailed employment dates. When queried about his job descriptions at these areas, he says "I did it all."
>
> He denies any prior history of known heart disease prior to 02/24/12 although he relates that he was told by his doctors that he must have had at least 2 heart attacks previously with no specified medical care for those episodes.

{¶ 34} Thereafter, Dr. Whitsett provided his physical findings on examination, identified and briefly discussed the numerous medical records which he reviewed. Thereafter, although Dr. Whitsett agreed relator had sustained a myocardial infarction and that he suffered from coronary artery disease, he opined those conditions were not related to his work activity as an instructor at HTC.  Specifically, Dr. Whitsett stated:

Based upon my review of the history, medical records and the physical examination, Mr. Dailey does have "coronary artery disease and acute myocardial infarction, init." The medical records document that he has coronary artery disease and that he did sustain an acute myocardial infarction.

* * *

It is my medical opinion that the condition of acute myocardial infarction and coronary artery disease are not related to Mr. Dailey's work activity at Hocking Technical College as an adjunct instructor on 02/24/12.

In my medical opinion there is insufficient evidence to support that his work activity on 2/24/12 resulted in the development of coronary artery disease, and I am unable to correlate his work activity as an adjunct instructor on 2/24/12 to the myocardial infarction that he sustained on 2/24/12. There is insufficient objective evidence to support that the myocardial infarction on 2/24/12 was reasonably a result of his work activity. No activity described on 2/24/12 is sufficient to have reasonably resulted in the alleged conditions of myocardial infarction and coronary artery disease.

My opinion considers that he has a long-standing history of poorly controlled diabetes, hyperlidemia, a history of sleep apnea, and a past history of firefighting work outside of this employer that can reasonably contribute to the development of symptomatic coronary artery disease and myocardial infarction. This considers the information provided by Mr. Dailey as pertains to his work activities as an adjunct instructor do not correlate with the stated work activity provided by the employer. This considers the 01/31/14 statement from Scott Mong, Public Safety Commander of Hocking College that states Mr. Dailey's main responsibility was the classroom lectures and he was rarely observed to be seen on the fire training ground since being hired as a full-time fire instructor in 2006.

There is no information to support a flow through condition.

The issue of aggravation/substantial aggravation of myocardial infarction does not appear reasonably supported as the diagnosis of myocardial infarction did not pre-date 2/24/12.

> The issue of aggravation/substantial aggravation of (pre-existing) coronary artery disease does not appear objectively supported. The onset of symptoms is not consistent with work activity induced symptoms. He was not performing strenuous activity at the time of illness onset. There is no documentation of a "precipitating event."
>
> Dr. Mattingly opines in his report dated 8/15/13 that there is a direct correlation between Mr. Dailey's exertion at work and the plaque dissection of his coronary artery which caused Mr. Dailey to suffer a myocardial infarction and necessitated open heart surgery. He states that the alleged conditions are work related as "His myocardial infarction occurred at work while he was under extreme physical and/or exertion type conditions." He does not cite any specific work activity that precipitated the onset of symptoms.
>
> I have been unable to corroborate that the work activity was indeed under extreme physical and/or exertional type conditions. The job description reviewed and information provided from the employer does not support that his work activity on 2/24/12 was physically exertional / stressful, and his work over time as an adjunct instructor did not result in significant exposures to inhaled materials/smoke to reasonably result in directly causing the coronary artery disease or causing a substantial aggravation of his coronary artery disease. The work exposure for his job as described is insufficient to result in coronary artery disease or the myocardial infarction.
>
> Unfortunately, Mr. Dailey has a significant risk factors [sic] for coronary artery disease and a subsequent myocardial infarction with a history of controlled Type II diabetes [poorly controlled on admission 2/25/12] and hyperlipidemia.

{¶ 35} Dr. Whitsett also opined that relator's CAD was pre-existing, but had not been shown to have objectively been aggravated by the events of February 24, 2012, there was no documented event that resulted in the onset of symptoms, and his work as an instructor did not result in sufficient exposure to objectively support the diagnosis of an occupational disease. Specifically, Dr. Whitsett stated:

> The condition of coronary artery disease is pre-existing. It has not been objectively shown to have been aggravated by the events of 02/24/12. He was not performing strenuous physical exertion on 2/24/12 that would reasonably have

resulted in the onset of symptoms, and there is no evidence to support that his work exposure as an adjunct instructor by way of occupational disease resulted in an aggravation.

* * *

In my medical opinion the condition of coronary artery disease is pre-existing, but it has not been substantially aggravated by the event of 02/24/12.

The condition of acute myocardial infarction did not result directly as a result of his work activity. There is no documented event that resulted in the onset of symptoms. His work with this employer as an adjunct instructor did not result in sufficient exposure to objectively support on the basis as an occupational disease. There is no evidence of a substantial aggravation.

{¶ 36} 13. A hearing before a district hearing officer ("DHO") on February 10, 2014 resulted in an order allowing relator's claim for "myocardial infarction and substantial aggravation of coronary artery disease." The DHO relied on the report of Dr. Mattingly to find a direct correlation between the physical exertion on February 24, 2012 and the subsequent myocardial infarction. The DHO also accepted Dr. Mattingly's explanation that the:

"[M]echanism of acute myocardial infarction is known to be a dissection or tear in the endothelial lining of the coronaries with exposure of the collagen and subendothelial lipids causing thrombus or clot formation, thereby occluding the artery." He opines that the exertional forces carried out by the Injured Worker caused plaque dissection in the coronary artery, and resulted in the myocardial infarction.

{¶ 37} 14. HTC appealed and the matter was heard before a staff hearing officer ("SHO") on April 2, 2014. The SHO determined that relator had met his burden of proving an occupational disease in the course and scope of his employment and allowed relator's claim both for the myocardial infarction as well as CAD.

{¶ 38} 15. Specifically, the SHO determined relator had met his burden of proving that HTC was "at least one of the Employers where the last injurious exposure occurred." Specifically, the SHO stated:

The FROI-1 alleges an occupational disease to exposure as work as a fire instructor.

The Injured Worker testified that he worked as a firefighter from 1968 through approximately 2005 then fire chief from approximately 2005 through the date of the 02/25/2012 myocardial infarction he further testified that he also worked as a fire instructor for the named Employer from 1999 through the 02/25/2012 date. He testified that as a fire instructor he had exposure to heat and gases when instructing and also when instructing on flash overs that he did at least one quarter per school year, something he estimated he did 40 to 45 times a quarter starting in 1999. His 01/02/2014 typed letter also notes his exposure as an instructor over the years. The exposure appears to be supported by the 7 (or 8)/29/2002 Preburn Briefing Session form. The Report of Employment by Employer's Agent form signed on 09/05/2013 is also found to support the Injured Worker's testimony. Based on the Injured Worker's testimony that he performed the instruction work and had exposures up to the 02/25/2012 date of the myocardial infarction, it is found the named Employer is at least one of the Employers where the last injurious exposure occurred and, therefore, a claim is allowable against this Employer.

Dr. Hague [sic] states the exposure to firefighting hazards (which have been found below to be the same for his firefighter and instructor work) contributed to an earlier expression of the disease and concludes there is a causal relationship between this medical condition and the mechanism of exposure. The allowance of the coronary artery disease is based on this report.

The Injured Worker testified that he had more exposure as an instructor than as a firefighter as the number of fires worked per year would be less than the flash over instruction per quarter. Based on this evidence and the Injured Worker's 1/2/14 statement, it is found the Injured Worker had the same exposures as a fire instructor as he did as a fireman and the use the term firefighter instead of instructor by the doctors is not found to render there [sic] reports unpersuasive or legally insufficient. Further, based on this evidence and the theory of dual causation (Norris v. Babcock & Wilcox Co. (1988), 48 Ohio App.3d 66) it is found the claim is allowable against the named employer.

> Dr. Mattingly indicates that as a result of the Injured Worker's exertion on the job at the named Employer acting on the coronary artery disease the Injured Worker suffered the myocardial infarction. Based on this the claim is allowed for the myocardial infarction on a flow through basis.
>
> The activity and exposure noted in the Injured Worker's 01/02/2014 statement and his testimony above clearly shows activity with this employer that distinguishes the job from employment in general and creates a risk grater and in a different manner from the public at large.

{¶ 39} 16. HTC filed a request for reconsideration alleging a clear mistake of law concerning the SHO's misapplication of the law of dual causation and last injurious exposure as it relates to occupational diseases.

{¶ 40} 17. In an interlocutory order mailed May 31, 2014, the commission vacated the April 24, 2014 SHO order and referred the matter for hearing on the issue of the misapplication of the theories of dual causation and last injurious exposure.

{¶ 41} 18. Shortly thereafter, relator filed an application for PTD benefits; however, that application was held in abeyance until the commission heard the request for reconsideration.

{¶ 42} 19. At the August 12, 2014 hearing, the commission granted HTC's request for reconsideration, stating:

> [I]n allowing the claim for an occupational disease contracted in the course of the Injured Worker's employment with the Employer, the Staff Hearing Officer misapplied the theory of dual causation as set forth in Norris v. Babcock & Wilcox Co., 48 Ohio App.3d 66, 548 N.E.2d 304 (9th Dist. 1988), and misapplied the doctrine of last injurious exposure as set forth in Hall China v. Indus. Comm., 120 Ohio App.374, 202 N.E.2d 628 (10th Dist. 1962). Therefore, the Commission exercises continuing jurisdiction pursuant to R.C. 4123.52 and State ex rel. Nicholls v. Indus. Comm., 81 Ohio St.3d 454, 692 N.E.2d 188 (1998), State ex rel. Foster v. Indus. Comm., 85 Ohio St.3d 320, 707 N.E.2d 1122 (1999), and State ex rel. Gobich v. Indus. Comm., 103 Ohio St.3d 585, 2004-Ohio-5990, 817 N.E.2d 398, in order to correct these errors.

{¶ 43} The commission vacated the SHO order and granted the claim exclusively for the injury of myocardial infarction, stating:

The Commission finds the Injured Worker sustained an injury on 02/24/2012, in the course of and arising out of his employment as a firefighting instructor when, after helping to lift and load approximately 50 wooden pallets onto a truck for transport to the Employer's firefighting training facility, the Injured Worker began to experience an onset of tiredness and weakness that persisted, with chest pain and shortness of breath developing later that same day.

The Commission **ALLOWS** the claim for **MYOCARDIAL INFARCTION**, with a date of injury of 02/24/2012. In allowing the claim for the specified condition, the Commission relies on the Injured Worker's handwritten statement filed 08/26/2013, his testimony at hearing regarding his work activity on 02/24/2014 [sic], and the symptoms he experienced on that day, which are consistent with his statement, the records from The Ohio State University Medical Center relating to treatment the Injured Worker received from 02/24/2012 through 03/03/2012, and the 08/15/2013 report from Charles Mattingly, M.D., an internal medicine specialist whose practice involves the treatment of cardiovascular diseases. The Commission finds the cited evidence persuasively demonstrates the Injured Worker's work-related physical exertion on 02/24/2012, caused him to suffer a myocardial infarction on that day.

The Commission finds Dr. Mattingly stated in his 08/15/2013 report in part as follows:

It is my opinion, to a reasonable degree of medical certainty, that there is a direct correlation between Mr. Dailey's exertion at work and the plaque dissection of his coronary artery, which caused Mr. Dailey to suffer a myocardial infarction and necessitated open heart surgery. The mechanism of acute myocardial infarction is known to be a dissection or tear in the endothelial lining of the coronaries with exposure of the collagen and sub endothelial lipids causing thrombus or clot formation, thereby occluding the artery and leading to an acute myocardial infarction.

Mr. Dailey's myocardial infarction occurred at work while he was under extreme physical and/or exertion-type conditions.

(Emphasis sic.)

{¶ 44} 20. Relator did not file an appeal to the common pleas court pursuant to R.C. 4123.512 after the commission exercised its continuing jurisdiction and allowed his claim

exclusively for myocardial infarction. Instead, on December 3, 2015, relator filed a C-86 motion asking that his claim be additionally allowed for CAD.

{¶ 45} 21. The matter was heard before a DHO on February 24, 2016 and resulted in an order denying the request finding the evidence did not support the conclusion that relator had developed CAD as a result of his employment as an instructor. Specifically, the DHO order provides:

> It is the order of the District Hearing Officer that the C-86 Motion filed by Injured Worker on 12/03/2015 is denied.
>
> After further review and consideration, it is the order of the District Hearing Officer that the Injured Worker's request for the additional allowance of the condition, "Coronary Artery Disease," is denied. The District Hearing Officer finds that the evidence in file and presented at this hearing does not support the addition of this condition in the present claim.
>
> The District Hearing Officer finds that the Injured Worker's work history as a fire fighter dates back to 1968. However, the District Hearing Officer finds that the Injured Worker only began working as a Fire Science Instructor for the employer of record in 1999.
>
> The District Hearing Officer further finds that the Injured Worker was not employed by the employer of record as a firefighter, but rather, as an instructor. While it is well taken that this position entails some drills in actual fire scenarios, the District Hearing Officer is not persuaded that the position with the employer of record requires more physical exertion or actual exposure to fire scenarios than his position as a firefighter with the town of Rushville.
>
> Evidence was reviewed and considered.

{¶ 46} 22. Relator appealed and the matter was heard before an SHO on May 31, 2016. The SHO vacated the prior DHO order yet still denied relator's request to allow his claim for CAD. Specifically, the SHO initially determined this was an injury claim and not an occupational disease claim:

> The Staff Hearing Officer finds the Injured Worker has not met his burden of proving the requested additional condition at issue is causally related to the 02/24/2012 industrial injury. The Staff Hearing Officer finds based upon the Industrial Commission order issued 09/26/2014, this claim was

specifically allowed as an **injury claim** with a date of injury of 02/24/2012. On 02/24/2012, the Injured Worker was working while he was under extreme physical and/or exertion-type conditions and suffered a myocardial infarction. The Staff Hearing Officer finds additionally allowing the claim for the condition Coronary Artery Disease is inconsistent with a claim recognized for an injury and there is no persuasive medical evidence to support a finding the Injured Worker's Coronary Artery Disease was caused as a result of the 02/24/2012 industrial injury.

(Emphasis sic.)

{¶ 47} Additionally, the SHO determined the statutory presumption set forth in R.C. 4123.68(W) was not applicable because relator was not employed as a firefighter for HTC. Specifically, the SHO order provides:

The Staff Hearing Officer finds the Statuary presumption set forth in R.C. 4123.68(W) is not applicable in this case. The Injured Worker was not employed as a firefighter nor did he volunteer as a firefighter for Hocking Technical College at the time of his 02/24/2012 industrial injury. The evidence presented at hearing and contained in the record indicates the Injured Worker was employed as an instructor for Hocking Technical College. In addition, the Staff Hearing Officer finds the medical reports relied upon by the Injured Worker in support of the C-86 motion, Ihsan Ul Haque, M.D. (10/10/2013), Steven Yakubov, M.D. (undated), Thomas Welch, M.D. (10/07/2016), and Charles Mattingly, M.D. (10/15/2013), are not found persuasive since these doctors either presumed or found the Injured Worker was working as a firefighter at the time of his 02/24/2012 industrial injury.

{¶ 48} 23. Relator's appeal was refused by order of the commission mailed June 28, 2016.

{¶ 49} 24. Despite the fact that relator's request for reconsideration was denied, the commission issued an interlocutory order finding it was arguable the SHO erred by finding the additional allowance was inconsistent with the claim recognized for an injury and erred in finding the medical evidence on file was unpersuasive because the physicians all assumed relator was working as a firefighter on the day of injury and because the SHO failed to adjudicate the additional allowance on the theory of substantial aggravation. The commission directed the claim be set for hearing on a sua sponte basis to determine

whether there was sufficient grounds for the commission to invoke its conditioning jurisdiction.

{¶ 50} 25. Thereafter, the commission determined it did not have jurisdiction to consider the motion for reconsideration because relator had, by that time, filed an appeal to the common pleas court pursuant to R.C. 4123.512. Specifically, the commission's order provides:

> 11/16/2016 – By interlocutory order issued 10/27/2016, the Industrial Commission requested the parties file briefs on the issue of the Commission's jurisdiction over the Injured Worker's C-86 Motion, request for additional allowance, filed 12/03/2015. The briefs were timely filed and after further review and discussion, the Commission finds the Employer's position well taken. The Commission does not have jurisdiction to address the Injured Worker's Motion.

> The Injured Worker filed an Appeal with the Court of Common Pleas, Athens County on 08/26/2016. Despite the Injured Worker's voluntary dismissal pursuant to Civ.R. 41(A) on 09/08/2016, the Commission finds jurisdiction remains pending with the Court. *State ex rel. Rodriquez v. Indus. Comm.,* 67 Ohio St.3d 210, 616 N.E.2d 929 (1993), *Kaiser v. Ameritemps, Inc.*, 84 Ohio St.3d 411, 704 N.E.2d 1212 (1999), and *Ciomek v. LTV Steel Co.,* 8th Dist. Cuyahoga No. 74646, 2000 WL 86840 (Jan. 27, 2000).

> The refusal order, issued 06/28/2016, is hereby reinstated.

> All evidence was reviewed and considered prior to rendering this decision.

{¶ 51} 26. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 52} Relator challenges the commission's August 12, 2014 order wherein the commission exercised its continuing jurisdiction, vacated the April 2, 2014 SHO order which had allowed his claim for CAD and ultimately allowing the claim only for myocardial infarction. Relator claims there was no mistake of law, the overwhelming medical evidence established that he developed CAD as a result of his exposure while an instructor at HTC, and the commission further abused its discretion by failing to expressly deny his right to participate for the condition of CAD.

{¶ 53} Relator also challenges the commission's October 6, 2016 order in which the commission determined that it lacked jurisdiction to consider a request for reconsideration of the disallowance of the CAD condition while relator had an appeal pending in the Athens County Court of Common Pleas for the allowance of that same condition.

{¶ 54} For the reasons that follow, the magistrate finds that the commission has not abused its discretion in this case, and this court should deny relator's request for a writ of mandamus.

{¶ 55} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 56} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 57} Let's begin with what we do know. Relator had been a fully certified firefighter since 1968. From 1982 through 2013, relator worked as a firefighter for Richland Township. During the last seven years of his employment with Richland Township, relator served as the department chief. It is undisputed that he was actively and routinely exposed to smoke, chemicals, fumes, and fires both as a firefighter and as a department chief.

{¶ 58} Relator also worked as an instructor at HTC where he taught firefighting from 1999 through February 24, 2012. According to the job description for an instructor at HTC,

relator's responsibilities were largely academic; however, clearly, part of instructing cadets to become firefighters involves teaching them how to deal with fire situations.

{¶ 59} On February 24, 2012, relator was moving pallets to prepare for a training fire at HTC. Because he was not feeling well, relator left and was not present for the training fire itself. Relator presented at the hospital where it was determined that he suffered an acute myocardial infarction. During the time he was treated at the hospital, doctors determined that relator suffered from CAD and that condition played a role in causing the myocardial infarction.

{¶ 60} The above facts are not in dispute and represent the only facts that are undisputed.

{¶ 61} When relator filed his FROI-1, he listed only HTC as his employer. Relator never asserted there was a causal connection between his employment as a firefighter and the occupational disease of CAD or the myocardial infarction which he sustained February 24, 2012.

{¶ 62} In the August 15, 2013 medical report relator submitted in support of the allowance of his claim, Dr. Mattingly specifically indicated that relator "suffered a heart attack while working as a firefighter in Lancaster, Ohio." At the same time, Dr. Mattingly noted that relator was "reaching for and lifting heavy pallets during a 'training fire.' " Thereafter, Dr. Mattingly discussed the occupation of firefighter and its known connection to the development of cardiovascular disease. Specifically, Dr. Mattingly noted that relator's "occupation of firefighting is known to be dangerous [and] the most frequent cause of death among firefighters is heart disease." In closing, Dr. Mattingly stated:

> It is my opinion, to a reasonable degree of medical certainty, that there is a direct correlation between Mr. Dailey's exertion at work and the plaque dissection of his coronary artery, which caused Mr. Dailey to suffer a myocardial infarction and necessitated open heart surgery. The mechanism of acute myocardial infarction is known to be a dissection or tear in the endothelial lining of the coronaries with exposure of the collagen and sub endothelial lipids causing thrombus or clot formation, thereby occluding the artery and leading to an acute myocardial infarction.
>
> Mr. Dailey's myocardial infarction occurred at work while he was under extreme physical and/or exertion-type conditions.

{¶ 63} Dr. Mattingly opined that employment as a firefighter is very likely to cause a person to develop cardiovascular disease and cardiovascular disease can lead to the occurrence of a myocardial infarction. Dr. Mattingly never rendered an opinion on whether relator's employment as an instructor at HTC caused CAD.

{¶ 64} Dr. Haque's October 10, 2013 report is similar. He too opined the alleged conditions of myocardial infarction and CAD existed and specifically stated that relator's "work as a firefighter exposed [him] to toxic fumes and chemicals. [He] did not have the explicit disease on joining the department and developed explicit disease after the exposure." As with Dr. Mattingly's report, Dr. Haque never discussed whether or not relator's employment as an instructor with HTC caused CAD which ultimately led to the myocardial infarction.

## 2014 Orders

{¶ 65} The DHO allowed relator's claim for myocardial infarction and substantial aggravation of pre-existing CAD. Relying on Dr. Mattingly's report, the DHO recognized that relator's activities on February 24, 2012 when he was setting up the pallets for the training fire caused a myocardial infarction. The DHO also appreciated that Dr. Mattingly opined that relator had developed CAD over the course of his lifetime (which included his overall family health as well as his work as a firefighter), that his work as an instructor substantially aggravated his condition and that, but for CAD, relator may or may not have suffered the myocardial infarction that day.[1] The DHO's conclusion is consistent with the medical evidence in the record.

{¶ 66} On appeal, the SHO modified the allowance. In the April 2, 2014 SHO order, the SHO allowed relator's claim for both myocardial infarction and CAD. Here, the SHO made the following finding: "[I]t is found the named Employer [HTC] is at least one of the Employers where the last injurious exposure occurred and, therefore, a claim is allowable against this Employer." The SHO also found that relator's argument that he had as much if not more exposure as an instructor than he did as a firefighter supported a theory of dual causation citing *Norris v. Babcock & Wilcox Co.,* 48 Ohio App.3d 66 (9th Dist.1988) and, as such, the claim was allowable against the named employer, HTC. Ultimately, the

---

[1] The magistrate believes this is the most accurate and correct order in the record.

commission exercised continuing jurisdiction because of these two conclusions in the SHO's order.

{¶ 67} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." In *State ex rel. B & C Machine Co. v. Indus. Comm.*, 65 Ohio St.3d 538, 541-42 (1992), the court examined the judicially-carved circumstances under which continuing jurisdiction may be exercised, and stated as follows:

> R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, *e.g., State ex rel. Gatlin v. Yellow Freight System, Inc.* (1985), 18 Ohio St.3d 246, 18 OBR 302, 480 N.E.2d 487 (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); *State ex rel. Cuyahoga Hts. Bd. of Edn. v. Johnston* (1979), 58 Ohio St.2d 132, 12 O.O.3d 128, 388 N.E.2d 1383 (just cause for modification of a prior order includes new and changed conditions); *State ex rel. Weimer v. Indus. Comm.* (1980), 62 Ohio St.2d 159, 16 O.O.3d 174, 404 N.E.2d 149 (continuing jurisdiction exists when prior order is clearly a mistake of fact); *State ex rel. Kilgore v. Indus. Comm.* (1930), 123 Ohio St. 164, 9 Ohio Law Abs. 62, 174 N.E. 345 (commission has continuing jurisdiction in cases involving fraud); *State ex rel. Manns v. Indus. Comm.* (1988), 39 Ohio St.3d 188, 529 N.E.2d 1379 (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and *State ex rel. Saunders v. Metal Container Corp.* (1990), 52 Ohio St.3d 85, 86, 556 N.E.2d 168, 170 (mistake must be "sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52"). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law.

*Id.* at 541.

{¶ 68} Here, the commission exercised its continuing jurisdiction based on the SHO's determination that, because relator's employment with HTC exposed him to substances which are known to cause CAD, HTC could be held solely responsible, from a workers' compensation standpoint, for the fact that relator developed CAD. The SHO relied

on the law of last injurious exposure and dual causation to reach this result. The magistrate finds the commission did not abuse its discretion when it determined this was a clear mistake of law in the SHO's order.

{¶ 69} In *Norris,* which was cited by the SHO, it was undisputed that during his employment with Babcock & Wilcox, Robert Norris was exposed to airborne asbestos. When Norris learned he had cancer of the larynx, he gave up cigarette smoking. Norris' cancer spread and ultimately he died.

{¶ 70} Norris' wife applied for survivorship benefits under the workers' compensation statutes. The commission denied her benefits; however, her appeal to the Summit County Court of Common Pleas resulted in a jury verdict finding that she was entitled to those benefits.

{¶ 71} On appeal, the court was called upon to determine whether the evidence supported a finding that cancer of the larynx was an unspecified occupational disease pursuant to former R.C. 4123.68(BB). Applying the test from *State ex rel. Ohio Bell Tel. Co. v. Krise,* 42 Ohio St.2d 247 (1975), the court stated:

> "An occupational disease is compensable under R.C. 4123.68(BB) where the following criteria exist:
>
> (1) The disease is contracted in the course of employment; (2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; and (3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally."
>
> The facts adduced at trial in the instant case were uncontroverted. B & W's defense was that it was Robert's smoking which proximately caused the cancer and not the working environment. Thus, the outcome of the trial hinged on whether the jury found Dorothy's expert or B & W's expert more credible. It was Dorothy's expert's opinion that based on a reasonable degree of medical probability:
>
> "A. I believe that the exposure, extensive exposure to asbestos as described by you was clearly a contributing cause to the development of the cancer of the larynx that he ultimately died from."

> The problem of dual causation has been especially troublesome in occupational disease cases where the occupational disease is respiratory in nature and the decedent was a smoker. See 1B Larson, The Law of Workmen's Compensation (1987) 7-465 to 7-489, Section 41.64. Nonetheless, we find that the basic principles of proximate causation are applicable to dual causation of occupational diseases. *McAllister v. Workmen's Compensation Appeals Bd.* (1968), 69 Cal. 2d 408, 71 Cal. Rptr. 697, 445 P. 2d 313. In Ohio, when two factors combine to produce damage or illness, each is a proximate cause. *Carbe v. Halloran* (1948), 150 Ohio St. 476, 38 O.O. 325, 83 N.E. 2d 217; 1 Ohio Jury Instructions (1988), Section 11.10, at 183.
>
> Upon review of the record, we find the evidence is sufficient to support a finding that Robert's exposure to asbestos was a proximate cause of his cancer. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578. The jury obviously placed more weight on Dorothy's expert's testimony than on B & W's expert testimony. Having crossed the proximate cause barrier, we find the facts of this case fit squarely onto the Krise test for finding an unspecified occupational disease.

*Id.* at 67-68.

{¶ 72} In the present case, the SHO determined that relator developed CAD as a result of his exposure to various elements both as a firefighter and as an instructor for HTC. Part of the problem with this finding is that, the theory of dual causation in this respect does not apply where a finding can be made that two different employers exposed an injured worker to something which ultimately caused an occupational disease. The theory of dual causation is used when the injured worker's personal life exposes him to factors which could cause a certain disease and, at the same time, the injured worker's work environment exposes him to certain factors which also cause the disease. This was a misapplication of the law which the magistrate finds was confirmed when the SHO then discussed last injurious exposure.

{¶ 73} In cases involving last injurious exposure, an injured worker has worked for multiple employers during their employment history, and each of those employers has exposed the injured worker to something, like asbestos, which contributed to the contraction of an occupational disease, such as asbestosis. Because it is impossible to

apporion responsibility to various employers in those circumstances, the law of last injurious exposure developed. The principle of last injurious exposure is applied in only one context: before allowance of a claim, in a situation involving several potentially liable employers. It involves a claimant who has recently experienced the onset of a long latency occupational disease such as asbestosis or black lung and always involves a claimant who has been exposed to the injurious substance while working for each of several employers. When the worker files a workers' compensation claim, the following question arises: When multiple employers have subjected the claimant to the hazard, against which employer should the workers' compensation claim be allowed? *See State ex rel. Roger Bacon High School v. Indus. Comm.,* 10th Dist. 10AP-277, 2011-Ohio-1383.

{¶ 74} In the present case, relator was still working both as a firefighter and as an instructor. Although relator stated he was exposed to greater risk as an instructor, the actual training records from HTC indicate he was only present at five training fires during the course of his employment with HTC (which is the conclusion of all the doctors). Relator never asserted that he acquired CAD as a result of employment as a firefighter—only as an instructor for HTC. Inasmuch as he was still working for both employers and, arguably, both employers exposed him to hazards which ultimately led to him developing CAD, the legal analysis upon which the SHO found HTC liable is faulty. As such, the magistrate finds the commission did not abuse its discretion when it exercised its continuing jurisdiction and vacated the April 2, 2014 SHO order.

{¶ 75} Finding that the commission did not abuse its discretion when it exercised its continuing jurisdiction, the court must now consider relator's argument that the commission abused its discretion by finding that his claim was allowed for myocardial infarction without noting whether or not CAD was denied. For the reasons that follow, the magistrate disagrees.

{¶ 76} When the commission exercises its continuing jurisdiction, the commission considers the initial issue de novo. Relator's FROI-1 asserted he suffered a myocardial infarction and substantial aggravation of CAD as a result of his employment with HTC. The commission relied on medical reports which indicated that, on February 24, 2012, while moving pallets, relator suffered a myocardial infarction. The commission allowed relator's claim solely for that condition. The commission was not required to specifically state that

it was denying relator's request that his claim also be allowed for either CAD or substantial aggravation of CAD. Relator has asked that his claim be allowed for two different conditions, the commission allowed the claim for one condition and not the other. At this time, relator could have filed an appeal to the common pleas court pursuant to R.C. 4123.512.

## 2016 Commission Orders

{¶ 77} Having found the commission did not abuse its discretion when it exercised its continuing jurisdiction over the SHO order which allowed relator's claim for myocardial infarction and CAD, the magistrate now considers relator's assertion that the commission abused its discretion when it found that it did not have jurisdiction, at a later date, to consider relator's argument that his claim should be additionally allowed for CAD inasmuch as relator had filed an appeal in the common pleas court. It is this magistrate's decision that the commission did not abuse its discretion in this regard.

{¶ 78} Relator's motion requesting clarification of the allowances to amend his claim to include CAD was heard before a DHO on February 24, 2016. After noting that relator was not employed as a firefighter for HTC, but rather as a fire instructor, the DHO found that while the instructor position entails some drills in actual fire scenarios, it does not require more physical exertion or actual exposure to fire scenarios than relator's position as a firefighter.

{¶ 79} On appeal, the SHO noted that this had initially been allowed as an injury claim and it would be inconsistent to now allow it as an occupational disease claim. Further, the SHO determined that R.C. 4123.68(W) was not applicable because relator was not employed as a firefighter for HTC. Relator's appeal from the SHO order was refused and he filed a request for reconsideration. Relator also timely filed an appeal under R.C. 4123.512 to the Athens County Court of Common Pleas appealing the commission's denial of his right to additionally participate in the workers' compensation fund for CAD.

{¶ 80} The commission issued an interlocutory order denying the request for reconsideration yet, at the same time, sua sponte referred the matter for hearing noting there were possible mistakes of law in the SHO's order.

{¶ 81} HTC argued the commission did not have jurisdiction because of the pending R.C. 4123.512 appeal. Relator immediately dismissed his appeal in the common pleas

court. When the commission heard the matter, it held that the trial court retained jurisdiction by the timely filing of the notice of appeal. The fact that the complaint had been dismissed was immaterial given that once an appeal pursuant to R.C. 4123.512 has been timely filed, it can be voluntarily dismissed and refiled within a one year period of time. On this basis, the commission declined to reconsider the SHO order.

{¶ 82} Because the magistrate finds the commission did not abuse its discretion when it allowed relator's claim solely for the condition of myocardial infarction, the question of whether or not his workers' compensation claim should also be allowed for CAD is not before this court. Only if this court were to find the commission abused its discretion by exercising its continuing jurisdiction in 2014 would the question appropriately be before this court.

{¶ 83} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated the commission abused its discretion either in 2014 or in 2016, and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).